For the next case, Kavita Davis against Workers' Compensation Commission 4080961. Council, please. I'm Oral Barrett II, attorney for the appellant. May it please the court, this case involves, as far as this appeal goes, the application of the law of causal connection and the acknowledgement of the fact that repetitive motion injuries develop over time. The standard of whether causal connection exists is whether there is evidence from which it is apparent to a rational mind, in consideration of all the circumstances of the case, that causal connection exists between the condition under which the work was performed and the injuries. How did the arbitrator be able to find that the carpal tunnel was related to her work at Family Dollar on November 20, 2002? Well, Your Honor, I submit that that finding cannot logically be made. Why not? Because there was no accident on that date, and as the testimony of Dr. David Fletcher said, the only basis on which you can have a carpal tunnel situation would be an extremely traumatic injury. Now wait a minute, she quit work on August 31 of 2002, is that correct? Full-time, that's correct. She worked five days part-time after that. It has a manifestation date after she quit the full-time work, some five months later. Well, no, it's our position the manifestation date was when the final clinical exam and... What day was that? December 16th of 2002. Was that four months later than when she quit work? Well, it would have been three and a half months. How did the emergency room doctor find out that she unloaded a truck at work 36 hours before she came to the emergency room? She told me. How did Dr. Zong find out that she had helped unload a semi-trailer truck on November 20, 2002? She told me. Why would she tell him that she unloaded a truck if it didn't have anything to do with her injury? Well, okay. A major problem in this case, if you want to consider the problem, is that we have a petitioner who is not astute. She was not aware of repetitive motion injuries. She didn't know that she had carpal tunnel syndrome or right lateral epicondylitis. She had no medical insurance, so she didn't seek medical care until the situation with her right carpal tunnel became extremely acute. And so she simply wasn't aware of how her injuries developed over time. And that is the only thing she could think of in recent time to set forth as some sort of basis for the occurrence. Well, this is a repetitive trauma injury case. That's obviously what she's talking about, correct? Correct. All right. And the Dr. Fletcher says that this is something that would develop over time. There was no specific injury at the subsequent appointment. That's correct. As we just alluded to, the diagnosis were bilateral carpal tunnel syndrome and right lateral epicondylitis. Those diagnoses are undisputed medical conditions. There's an EMG test that was conducted shortly after she reported the condition, correct? Correct. So longstanding median neuropathy. So what does that mean? Well, in accordance with the testimony of Dr. Fletcher, that means that neuropathy existed prior to her appointment by family dollar or second employer. So that test supports the claim of a longstanding condition, correct? Yes, it does. Okay. What did Dr. Martin say? What was his opinion? His opinion was that, in a nutshell, I think that if she had not unloaded the truck on November 20th of 2002, she would not have needed medical care. Or surgery. Or surgery. Yeah. The precipitating cause was the unloading of the truck. Well. That's what he said. That's what he – I guess that's what he tries to imply. I don't know that he implies it. I think he said it. Well. The need for medical treatment and surgery was caused by her unloading the semi-trailer truck on November 20th of 2002. But he also admits that that is not the sole cause for her condition. And her condition is the bilateral carpal tunnel syndrome and right lateral epicondylitis. It's not whatever percentage that one might want to attach of the aggravation caused by unloading the truck. Assuming that is correct. After she quit work on August 31st, she worked only a total of five days. For all the places that responded to her, correct? For the employer. So she didn't work every day. No. She worked five days in about a four-month period. Well. She worked five days in, I think, a three-month period. From September through November. The petitioner had a job analysis performed in this case. And she testified to being employed full-time by the respondent for a period in excess of 18 years. During that 18 years, the job analysis that was performed said she worked 50 hours a week. She lifted weights in her work from 50 to 75 pounds. And she was engaged in repetitive pain usage. And that she pushed and pulled dollies loaded with cases of alcohol. Until July of 2002, the respondent operated both as a packaged liquor store and as a tavern. And the petitioner worked in both of those entities. In the course of doing, her testimony was that she stocked 50 boxes or cases of alcohol in the tavern. And a like number of cases or boxes with respect to the packaged liquor sale. So she handled about 100 boxes or cases per day. Her testimony, which was undisputed, was that in August 2001, she began experiencing hand numbness, burning, tingling, and swelling. And she also began experiencing a burning in the right elbow. Those symptoms increased in the final 13 months of her employment by the respondent. As I said before, the petitioner was not aware of repetitive motion injuries. Let me ask you a theoretical question. Assume for a moment that an employee suffers from carpal tunnel as a result of repetitive activity for an employee. But the carpal tunnel does not require surgery. The carpal tunnel does not require any medical care whatsoever. And the employee leaves that employer and goes to work somewhere else. And does something that aggravates that carpal tunnel to a point where they need surgery and they need medical attention. Can you stick the original employer with those costs or do you have to stick the subsequent employer? Well, if there's an aggravation, then there has to be a division between the permanent partial disability, let's say, that might exist. I mean, obviously, the condition is deleterious. And obviously, that was a problem that occurred due to activity of the first employer. And that has to be determined. Well, but wait a minute. You know, if this were a case against family dollar, you'd be turning around arguing, saying the employer takes the employee as they find them. And therefore, the employer, family dollar, if the aggravation took place on their watch, is responsible for whatever medical treatment is required to cure the problem. In this particular case, you're not going against family dollar. You're going against the original employer. And you've got a doctor here that says, wait a minute, including Fletcher, by the way, who says, wait a minute. It was the unloading of the semi-trailer truck that precipitated the need for surgery and medical attention. She didn't need it when she left the last employer. Yeah, she had carpal tunnel, but she didn't need the surgery. She wasn't permanently partially disabled. The precipitating event is the unloading of the trailer truck. So why is the first employer responsible for that? She aggravated it when she was working for someone else. Well, I don't think you can say for absolute fact that she didn't need the surgery because there was no diagnosis that we can point to prior to unloading the truck that identified the options or recommendations of the physician for treatment. Obviously, in the... It wasn't asymptomatic, was it? No. In fact, she testified the symptoms still existed at the time of the hearing before the arbitrator. And when Dr. Fletcher examined her and he conducted a physical exam himself in 2005, which is more than two years after the carpal tunnel release was performed, he still found carpal tunnel symptoms, at least in the left wrist, and also mild lateral epicondylitis. Well, I was saying when she was employed by her prior employer, OASIS, was she asymptomatic at that time? Not in the last 13 months of her employment. Who did she seek medical attention from during those 13 months? No one. No one. So why wasn't she asymptomatic? She said it hurt? Yes. Martin was asked some questions, and the questions were, did he have an opinion whether the claimant's employment caused her to seek medical treatment with regard to her carpal tunnel? His answer was simple, it did not. He was asked again whether her work caused the need for a carpal tunnel surgery. The answer, it did not. So now the question becomes, are you trying to take a prior employer and charge them with the medical expenses attended to an aggravation that occurs when she's working for someone else? Without that aggravation, would she have needed surgery? Fletcher says no. Martin says no. She didn't have a medical examination before that. That's their testimony. That could be the case. It could also not be the case. She could have been running her vacuum cleaner, and that could have been the last action that was needed to make her carpal tunnel acute. Is there an explanation in the record why she quit her job in the bar? No. I don't know if it has any connection with the reduction in the bar. They terminated their packaged liquor store, and that actually reduced some of their work. I don't know if that had a connection with that or not. There's no testimony in the case regarding the reason for that. I think it's important to note, too, that basically the argument that the defendant, I mean the respondent is attempting to make in this matter, is to really suggest that there was a sole occurrence on November 20th that resulted in the petitioner seeking medical care. But the record is consistent from the very first time that she went to the emergency room that there was no trauma. She said this has happened before. When she first went to the occupational physician, the occupational physician took history that this numbness and tingling sensation has been intermittent for about a year. When she went to the orthopedic surgeon, he also said that she had numbness and tingling in her fingers for around a year. So there's no question that this is not a single occurrence, that this is a cumulative injury over time, and it probably started before. Your time is up, counsel. We have time on the button. Counsel, please. Good morning. May it please the Court, Bob Mueller on behalf of the respondent, all the aces in this case. There are a couple of things that are important. They've, I think, been addressed already, but I just want to make sure. This lady had no medical care at all. Nothing's in the record until she goes to the ER on 11-23-02. No medical care at all during her employment with the respondent here. What's her explanation of why she didn't have medical care? Was it that she didn't have insurance and she didn't believe it was related to her work? And she didn't believe it was related to work? My understanding from what she said was simply that she didn't have any insurance. Now, the testimony from Dr. Martin was that she didn't feel she needed any medical care because she never went. But that's what she said. She also said the part about she didn't believe or wasn't aware of repetitive trauma injuries. I don't know that that had anything to do with the fact that she didn't go to seek any medical care before, but she did say that also. Not being able to pay for it may have something to do with not going to get medical care. It could. There's no evidence in the record, however, to say that she had any medical coverage when she did go. She told the people at the hospital when she went that she'd had problems before, but they were much worse now, and that's what caused her to come in. And that's what she basically told Dr. Zong, too. Counsel, I think we can all agree there was no traumatic event subject to employment. So the theory of recovery would have to be the repetitive trauma that manifested itself or was aggravated, perhaps, of the events of November 20th. And Martin testifies. In my opinion, he says, I don't think there's any question about the events of November 20th aggravating something or other, whether it was the preexisting condition, which is most likely the case, that would be true. So what about the doctrine that the claimant is arguing? Well, the employment need only be a cause, not the sole cause or the principal cause. So if the events of November 20th aggravated a preexisting condition, would the claimant be denied recovery? And if so, why? I'm not sure I understood the part about denying recovery. The point was made already by Justice here that what we have here, at the very least, is an aggravation of her preexisting condition. Assuming she had a preexisting carpal tunnel. She never needed medical care, in my opinion. The record reflects that she never had medical care. Her condition was never so bad that she sought medical care. Until after she did this work for a family dollar on 11-20-02. That caused her to get medical care. That is clear from the records, to me anyway. But when she went into the ER on 11-23-02 and when she saw Dr. Zung on 11-25-02, she said that she referred back to the work unloading the semi. She referred to that as the cause. And both Dr. Fletcher and Dr. Martin say it was the precipitating cause of her needing to get medical care and needing the surgery. That caused it. That work on that day. I think my questions were theoretical in nature, and I'll make them as clear as I can make them. Assume that a person does develop carpal tunnel as a result of repetitive work for an employer. But that carpal tunnel is not progressed to an extent that surgery is necessary, no medical care is necessary. You've got carpal tunnel, your hand tingles. People get it from typing. They get it from all sorts of things. But then the person leaves the employment, goes to work for someone else, and an event occurs that aggravates that condition to an extent that they need surgery, they have to take time off work, and they have a permanent partial disability. Who is responsible for that? That's the theoretical question. Right. And the answer is family dollars responsible in this case, getting beyond the theoretical question. But the subsequent employer is the one that should be responsible. The CISPRO argument is only good if the aggravation takes place while the employee is working for the respondent. It doesn't apply when the employee's aggravation takes place when they're working for a subsequent employer as opposed to the employer when the aggravation takes place. That's what I'm trying to figure out. Are there any cases which would suggest that a prior employer is responsible for an injury that is precipitated by an event occurring with a subsequent employer? Any case ever says that? Not that I know of. Let me change the hypothetical. What if you are in need of medical care, but you do not request it or do not receive it while you're working for the prior employer? You may need medical care, but you don't request it or receive it. Does the answer change? In my opinion, what you have to look at is what happens subsequently. Do you have a subsequent activity that results in an increase in symptomatology? That's what happened here. At least that's what Jovita Davis reported to the medical providers that happened here. I would say in answer to your question, if there's no evidence of a precipitating event with the new employer, Sure. What's the precipitating event? What's the precipitating event? Let me interrupt you for a second. I'm not saying there's a precipitating one-time event, but it's a precipitating sequence of work activities, if you will, that occurred on 11-20-02. Following up on Justice Dunham's question, Klayman testified she first experienced symptoms in August 2001. Who was she working for then? The tavern. The respondent. Right. Testimony is confirmed by the history that you had the EMG test shortly after November 20th, which showed longstanding median neuropathy. How does that take the tavern out of the range of responsibility? In my opinion, Your Honor, there is no way that the tavern should be responsible for paying the medical bills for her treatment or paying for her TTD or paying for the permanency related to that surgery because she had precipitating activity working for a new employer, which caused her to go seek that medical attention and need the surgery. And that is testified to by both Fletcher and Martin. Is there any evidence in the record, any evidence in the record, any doctor or client, that on the day she left working for your client, she needed medical attention or surgery for carpal tunnel? No. She never had any medical care until November 23rd. I didn't ask if she had medical care. I asked if any doctor opined that she needed it when she left. No. So there's absolutely no evidence, no medical evidence, to support the notion that she needed medical intervention the day she left your employer, your client. There's a subsequent precipitating event, and we have two doctors who have opined that the precipitating event leading to the surgery is her subsequent employment in unloading a truck. Is that the case? That's correct. What's the definition of a superseding intervening cost? What does that mean? To me it means it changes the course, if you will. And in this case it changed the course that she needed medical care, as opposed to previously there was no medical care. And there's a reason for that. Well, isn't part of the confusion here is that we're dealing with a condition, and a lot of times we deal with injuries in the law. But we have a condition. And you're not denying that she had a condition when she left the respondent's employee, right? I think the medical, there is nothing. I don't have anything that says that she didn't. Well, you have some tests while she was in the employee. I thought I heard one of my colleagues say that established she had some neuropathy. Like I said, I have nothing that says she didn't have it. I'm not arguing that she didn't have it. Okay, right. No, don't jump ahead here. Okay, so she's got a condition, okay, which the record would suggest existed at the time she left the employee or the respondent. But it was not apparently a condition that was manifesting itself in a debilitating manner. Is that probably a fair statement? I would have to agree with you. Okay, and so that when she went into the employee of Family Dollar, right, then there is some event or a series of events while she was in that employee that took that condition to a level of necessitating medical treatment, correct? Correct. And? Doctor? Can I ask a question? Why isn't Family Dollar the respondent? Have we got a problem here with a statute or notice? I don't know. I mean, I'm representing the employee. No, I understand. Maybe you tried the case and found out the reason. I don't have the idea. Specifically here, I'd like to say a couple things that may hopefully add on to what we've been talking about. Dr. Fletcher specifically said that the precipitating cause of her seeking medical attention was unloading the semi. He said that unloading the semi was sufficient activity to aggravate a preexisting carpal tunnel. He said that after unloading the semi, her symptoms were worse enough than ever before so that she sought medical care. And he finally said that unloading the semi caused an increase in her symptoms sufficient enough to increase the symptomatology to the point that she needed surgery for the carpal tunnel. Let me make this real simple. The arbitrator, whose decision the majority of the commission adopted, said that based on the testimony of Martin and Fletcher, the arbitrator found that the need for medical care ultimate surgery for the petitioner's carpal tunnel syndrome was the direct result of the petitioner's activity at work at Family Dollar. Then goes on to say that the petitioner failed to prove that there was a causal connection between working for your client and the condition requiring medical care. Now, this is a manifest way case. Fletcher and Martin both said that. So there is competent evidence in the record supporting the commission's decision when they adopted the arbitrator's decision that she failed to prove a causal connection. I suppose I have trouble with this because people seem to believe that manifest way means there's only one right answer. And that's not true. I mean, if the commission had gone the other way and had decided this along Molly Mason's descent, you'd be on the other side of the aisle and your opponent would be saying there's competent evidence in the record to support that position. So if you've got competent evidence in the record to support either decision and the commission chooses one above the other, how do you say it's against the manifest way of the evidence? I agree. I don't see how you can say it's against the manifest way of the evidence here because you've got both doctors saying that. I mean, I do not see that you can possibly say that an opposite conclusion is clearly apparent when you have two doctors saying that. And I don't see that we get to the point where this is against the manifest way of the evidence. I mean, both the doctors said that the work at Family Dollar caused the symptomatology to be bad enough that she needed medical care in the surgery. Based upon that, you know, the arbitrator was right, the commissioner was right, and I think this court should affirm. And I'm done unless there are further questions. Thank you, counsel. Roberto, please. Can you help me out with two questions? Okay. What happened at Family Dollar? Why aren't they responding? Well, I think that the petitioner felt that Family Dollar, when she understood her condition, was not the causative agent of that condition and didn't want to make a claim against it. The second question I have is the theoretical question, is do you believe there's only one right answer to these questions or do you think that if the commission had gone the other way, it would be okay? I mean, it wouldn't be against the manifest way. And if they go this way, it isn't against the manifest way. Or do you believe that there's only one right answer? There is at this point because you don't have to have surgery to have a claim for carpal tunnel syndrome. No, there's no question about that. And if you want to take it even a step further, I'm not sure you have to have medical treatment to have a claim for carpal tunnel syndrome. Dr. Fletcher clearly opined to a reasonable degree of my uncertainty that the petitioner had bilateral carpal tunnel syndrome and right lateral arpicondylitis that was caused by the job activities of the respondent. The medical records, according to the arbitrator, in November and December of 2002, contained no indication that the petitioner was suffering from right lateral arpicondylitis. Is that right? I don't believe it. Well, in November, her diagnosis, I think, on that was originally made in February of 2003 by an orthopedic surgeon. And she had burning in her elbow, which began in August of 2001. That continued over time. It's also interesting to note when Dr. Fletcher carried out his physical examination a little bit over two years later, I think it was in June of 2005, he also found mild right lateral arpicondylitis. So the condition existed. And I think that it's another repetitive motion type injury. And it's clear from the testimony of Dr. Fletcher that that condition existed when she was an employee of the respondent. The bottom line in this matter is the existence of the claim, it's not determining what damages or what monies may be due for reimbursement for medical expense or even to the extent of how you would parcel out any kind of permanent partial disability, parcel out to who? Well, not the dollar store. Well, our position is that, at best, family dollars were causing aggravation of a preexisting condition. Okay, if you assume that there's X number of dollars, assuming a valid claim here, that would compensate for that injury, whatever percentage family dollar may be responsible for that would have to be deducted from that total package for the claim against all ACEs. But we're not to that point in this situation. This case was basically denied because of the claim that there was no causation of the conditions due to the job activities of the respondent. And that's really the issue we have here. It's not whether all of the damages are necessarily the responsibility of the respondent. And that's partially what they're trying to argue, to avoid any responsibility, which, frankly, I think is ludicrous on its face. Thank you. Of course, we'll take the matter under advisement.